PASSAIC VALLEY WATER COMMISSION, PROSECUTOR, v. DEPARTMENT OF CONSERVATION, DIVISION OF WATER POLICY AND SUPPLY OF THE STATE OF NEW JERSEY, FORMERLY KNOWN AS STATE WATER POLICY COMMISSION, DEFENDANT.

Submitted May 6, 1947—Decided October 17, 1947.

Before Justices Donges, Colie and Eastwood.

For the prosecutor, *Benjamin J. Spitz.*

For the defendant, *Walter D. Van Riper,* Attorney-General (by *Robert Peacock,* Deputy Attorney-General).

The opinion of the court was delivered by

Eastwood, J.   Prosecutor, Passaic Valley Water Commission, a public body engaged in the supply and distribution of water for the Cities of Paterson, Passaic and Clifton brings *certiorari* to review a certain resolution and determination of the defendant, Department of Conservation, Division of Water and Supply of the State of New Jersey, adopted on August 2d, 1945, denying the request and demand of prosecutor for a reduction of the charges for excess water diversion from the Passaic River watershed during the year 1944.

The respective parties agree as to the facts and accordingly the only issue before us is that of the proper judicial con-

struction to be applied to the pertinent statute involved. The statutory provisions material to the issue are found in *R. S.* 58:2–2 and read as follows:

"Payment for water diverted as provided in section 58:2–1 of this title shall be deemed to be a license and its amount shall be fixed by the state water policy commission [now designated as Department of Conservation, Division of Water Policy and Supply of the State of New Jersey] at a rate of not less than one dollar nor more than ten dollars per million gallons. If at all times an amount equal to the average daily flow for the driest month, as shown by the existing records, or in lieu thereof one hundred and twenty-five thousand gallons daily for each square mile of unappropriated water shed above the point of diversion, shall be allowed to flow down the stream, the commission shall fix the minimum rate and may increase the rate proportionally as a less amount is allowed to flow down the stream below the point of diversion, due account being taken in fixing said increase both of the duration and amount of the deficiency. The aforesaid one hundred and twenty-five thousand gallons daily for each square mile of unappropriated watershed shall be additional to the dry-season flow or any part thereof which may be allowed to flow down from any appropriated watershed or watersheds above the point of diversion." (Brackets ours.)

The formula adopted by defendant for the computation of the charge made to the prosecutor and other similar agencies for the diversion of water is based upon an interpretation of the statute to the effect that the quantity of water which is required to be let down by diverters is 125,000 gallons per day per square mile and as the flow in the river is diminished below that figure, a proportionally higher tax is assessed accordingly. By this formula the tax for the year 1944 complained of amounted to $14,571.30.

*Per contra,* prosecutor contends that the charge for diversion should be based upon the average daily flow for the driest month, as shown by the existing records. According to records known as United States Geological Survey Water Supply Paper No. 726, which were available at the time of the assessment, the average daily flow for the driest month

occurred during the month of September, 1932, from which it appears that the quantity of water to be let down the stream is 75,400 gallons per day per square mile. It is thus urged by prosecutor that should the Passaic Valley Water Commission let down at least that much water, the tax should be based on the $1 minimum per million gallons which was the rate adopted by defendant. On this basis prosecutor contends that the tax for the year 1944 would have been $10,937.73.

It is said on behalf of the defendant that prosecutor's figures do not make any allowance for evaporation loss from several large reservoirs on the watersheds. It is said that such a correction would have shown the flow to be 115,000 gallons daily per square mile. The reservoirs referred to are known as the Wanaque, Pequannock and Boonton. They are not owned by prosecutor. On the basis of 115,000 gallons per day the total tax would have amounted to $13,883.54.

The resolution complained of was adopted by defendant in accordance with an opinion of the Assistant Attorney-General which held that defendant was justified and required to apply the formula based upon the use of the 125,000 gallon figure. In view of the Assistant Attorney-General's opinion, the defendant concluded that it had no alternative except to assess the tax on that basis.

The issue before us, therefore, is a narrow one and concerns itself with the proper interpretation of the phrase "If at all times an amount equal to the average daily flow for the driest month, as shown by the existing records, or in lieu thereof one hundred and twenty-five thousand gallons daily for each square mile of unappropriated watershed above the point of diversion, shall be allowed to flow down the stream." Does the statutory language mean that where there are existing records then the defendant must base the tax upon an amount equal to the average daily flow for the driest month, or do the words mean that an alternative method of assessment upon the basis of 125,000 gallons is granted to the defendant? Do the words "or in lieu thereof" give the defendant a discretionary power to determine which one of the methods it will adopt in fixing the charges?

We have carefully considered the record and statute before

us and are of the opinion that the legislature, by the enactment of *R. S.* 58:2-2, intended to increase the assessment for excess diversion proportionally as the stream flow was decreased by reason of the diversion and based the proposed charge on the average daily flow for the driest month as shown by the existing records. The legislature, however, also contemplated the case that might arise where there were no existing records available and provided in such event that the basis for computation was to be made upon the arbitrary figure of 125,000 gallons daily for each square mile of unappropriated watershed above the point of diversion. We hold that the defendant is restricted to the formula set up in the statute and that where existing records are available, as here, the tax is to be computed upon the average daily flow for the driest month as shown by the existing records.

The defendant urges in support of its position that prosecutor's figures make no provision for evaporation losses from any watershed or watersheds above the point of diversion. As to evaporation, the statute is silent thereon and we are not privileged to read into it words omitted, whether purposely or not, by the legislature.

We are informed that the defendant has adopted the 125,000 gallon formula in charges made to other diverters over a period of years and suggests that the use of this method establishes a fairly accurate and convenient method of assessment. Suffice it to say, we are not here concerned with any question of established practice by the defendant; our sole inquiry is limited to the express words of the governing statute.

We have considered the other points advanced by defendant in support of its contentions and find them to be without merit.

The assessment is set aside and the record remitted for the purpose of computing the charge for excess diversion in accordance with the conclusions herein expressed.